# UNITED STATES DISTRICT COURT
for the
Eastern District of California

FILED
JUL 29 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

United States of America
v.
Jose Garcia-Zamora

*Defendant(s)*

)
)
)
)
)
)
)
)

Case No.

1: 19 MJ 0 0 1 4 9 SKO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 26, 2019__ in the county of __Tuolumne__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Manufacture Marijuana, a Schedule I Controlled Substance; |
| 21 U.S.C. 846 | Conspiracy to Manufacture, Distribute and Possess with Intent to Distribute Marijuana, a Schedule I Controlled Substance. |
| 18 U.S.C 924(c) | Possess a firearm in furtherance of a drug-trafficking felony. |

See penalty slip attached for maximum penalties.

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Joseph M. Cook, which is incorporated herein by reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*
Joseph M. Cook, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 27, 2019

_____
*Judge's signature*
Hon. Sheila K. Oberto
*Printed name and title*

City and state: Fresno, CA

## United States v. Jose Garcia-Zamora
## Penalties for Criminal Complaint

**Defendant**
Jose Garcia-Zamora

### COUNT 1:

VIOLATION: 21 U.S.C. § 841(a)(1) – Manufacture 1,000 or More Marijuana Plants

PENALTIES: Mandatory minimum of 10 years in prison and a maximum of up to life in prison; or
Fine of up to $10,000,000; or both fine and imprisonment
Supervised release of at least 5 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 2:

VIOLATION: 21 U.S.C. §§ 846, 841(a)(1) - Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute 1,000 or More Marijuana Plants

PENALTIES: Mandatory minimum of 10 years in prison and a maximum of up to life in prison; or
Fine of up to $10,000,000; or both fine and imprisonment
Supervised release of at least 5 years up to life

SPECIAL ASSESSMENT: $100 (mandatory on each count)

### COUNT 3:

VIOLATION: 18 U.S.C. § 924(c) – Possession of a Firearm in Furtherance of a Drug Trafficking Felony

PENALTIES: Mandatory minimum of five years in prison and a maximum of up to life in prison, to be served consecutively to any other sentence imposed; or
Fine of up to $250,000 or both fine and imprisonment
Supervised release of up to 5 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

## I. AFFIANT'S TRAINING AND EXPERIENCE

I, Joseph M. Cook, being duly sworn, do hereby swear or affirm:

1. I am a Special Agent with the United States Forest Service (USFS), and have been since April 2018. Prior to being a Special Agent, I was a Supervisory Law Enforcement Officer (Patrol Captain) with the US Forest Service for approximately three and a half years. Prior to being a Patrol Captain with the Forest Service, I was a Law Enforcement Officer with the U.S. Forest Service for four years. I am a graduate of the Federal Law Enforcement Training Center's Land Management Police Training Program (2010) and Criminal Investigator Training Program (2019). My primary duties include detecting, investigating, apprehending, and prosecuting criminal activity on and relating to National Forest System lands. I have the powers of a California State Peace Officer per California Penal Code section 830.8 (a) and (b).

2. I have conducted numerous controlled substance investigations and have arrested/cited many persons for being under the influence, possession, manufacturing and transportation of various controlled substances and illegal drug paraphernalia. I have investigated or participated in the investigation of numerous clandestine, outdoor marijuana cultivation sites on federal, state and private lands. The marijuana cultivation sites have been in various stages of production. I have flown marijuana reconnaissance missions with officers and agents who have attended the DEA Aerial Cannabis Observation School and have spotted marijuana gardens by air. I have also taken part in marijuana garden raid and reclamation operations, along with residential search warrants related to marijuana cultivation investigations.

3. While employed as a LEO, I attended an 80-hour Drug Enforcement Training Program course given by the USFS, which focuses specifically on marijuana cultivation activities on Forest Service

1

AFFIDAVIT

Lands. I have written and been the affiant on multiple search warrants, testified in front of a Grand Jury, and written multi-jurisdictional operations plans related to marijuana cultivation investigations on public lands within the Eastern District of California.

4. During the course of my work, I have had the opportunity to converse with numerous Law Enforcement Officers and drug enforcement officers, informants, as well as admitted and known drug traffickers, including outdoor marijuana growers/traffickers, as to the methods, regarding the manufacture, importation, transportation, distribution and sales of controlled substances. I have been the affiant on federal search and arrest warrants and have testified in federal court in the area of narcotics.

5. Through prior investigations and training, I have become familiar with the types and amounts of profits made by drug dealers and the methods, language and terms that are used. I am familiar and have participated in various investigative methods including, but not limited to, visual surveillance, interviewing of witnesses, search warrants and use of confidential informants. I have worked joint investigations with various experienced Law Enforcement Officers who are trained in narcotics investigations and I have drawn from their knowledge and expertise in the field of narcotics enforcement.

6. Typically, drug traffickers possess firearms and other dangerous weapons to protect themselves or their contraband. Based on my training, experience and discussions with other experienced narcotic agents, I know that firearms are often found at marijuana cultivation sites on public lands.

7. I know that marijuana traffickers often cultivate marijuana on public lands throughout the country, including the Eastern District of California.

8. Based on my training and experience, through discussions with experienced narcotics investigators and through the information I have learned through investigations, I know that most outdoor live-in marijuana cultivation operations are generally conducted in a similar manner. Outdoor

marijuana cultivation operations involving a large number of marijuana plants require substantial labor to tend to the plants, provide logistical support for the labor force tending to the plants and provide financial support until proceeds for the processed marijuana are received.

9. Outdoor marijuana cultivation organizations start exploring and scouting potential cultivation sites in the late winter and early spring. These organizations are normally in search of areas in which the snow melts comparatively early, in close proximity to a viable water supply and isolated to avoid encounters with recreationalists. Most outdoor marijuana cultivation organizations desire to plant marijuana plants as early as possible in order to harvest the plants as early as possible and potentially tend a second crop for the year before it becomes too cold in the late fall and early winter. Additionally, during scouting excursions, these organizations attempt to identify drop points that can be utilized for the delivery of supplies, equipment and people, which are in adjacent proximity to the cultivators' trail heads and/or cultivation sites. A drop point is a designated location where the drivers can deliver equipment, supplies and workers for the cultivations sites(s). Drop points are normally located along a rural route so that the cultivation workers can walk the delivered supplies to the camp area and the marijuana from the grow site to the drop point. It is normal to locate a distinct trail system near the drop points. On most occasions, these organizations favor their drop points to be located in remote areas where law enforcement and recreational traffic is scarce, in order to avoid detection.

10. Once an outdoor marijuana cultivation organization identifies possible cultivation sites, the organization engages in procuring needed supplies to prepare the land and locate and set up a water source for the cultivation site. In many cases, fertilizers, herbicides, pesticides and irrigation equipment are acquired from various vendors, as well as through illegal sources, such as through smuggled items brought into the United States.

11. As equipment and supplies for the marijuana grow site are procured, the outdoor marijuana cultivation organization starts to deliver items to the area of the marijuana cultivation site. Usually, these items are delivered to the pre-designated drop points.

12. The land is prepared for planting and watering of the marijuana plants. Once a natural water source is identified and tapped into and a water reservoir is established, an irrigation system is constructed. The natural vegetation is cut, removed or thinned to make space for the marijuana plants. Locations for the camp are also established.

13. After the land has been prepared for planting, the marijuana seeds or plants are placed into the ground. For cultivation sites that use live-in workers, camps are prepared, and the live-in workers establish unauthorized occupancy in the cultivation areas.

14. Throughout the growing season, which typically lasts between three and six months, various supplies, equipment and groceries are purchased by or provided by individuals who deliver the supplies to the grow sites. These individuals are frequently referred to as "lunch men." The lunch men deliver needed supplies and workers to the designated drop point. The lunch men also retrieve processed marijuana from the grow site and pick up workers from the marijuana grow site.

15. As the marijuana plants mature, more workers arrive at the cultivation site(s) to help with the labor involved in harvesting and processing of the marijuana buds. The harvested marijuana is laid out to dry in processing areas within the cultivation site(s) and as it becomes dried, it is packaged and moved to the drop point for pick up by the drivers for delivery to the distribution centers or to the organization's leadership.

16. I know that persons cultivating marijuana for sale will routinely have a variety of vehicles at their disposal, which will be newly purchased used vehicles, borrowed vehicles, or vehicles not

4

AFFIDAVIT

registered to the current owner, to circumvent Law Enforcement from determining the identity of the person using the vehicle or the actual owner of the vehicle to deter further investigation.

17. Upon completion of harvesting the marijuana plants, the sites are abandoned, leaving behind materials such as pesticides, herbicides, fertilizers, trash, propane tanks and food items. The items left behind attract wildlife, such as bears, which attempt to eat the discarded items. The by-products of marijuana cultivation have the capability of harming the environment and wildlife and contaminating nearby water sources, such as creeks and streams.

18. Based on my training, experience, and my participation in other investigations involving large amounts of controlled substances, I know that the following items are commonly found at drug trafficking locations such as outdoor marijuana grow sites:

   a. Contraband, proceeds of drug sales, and records of transactions, drug sources, and drug customers,

   b. Drug traffickers often possess weapons in order to protect themselves, their drugs, and their drug proceeds from others,

   c. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing controlled substances,

   d. Drug traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization, even if these items might be in code,

   e. Drug traffickers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product (controlled substances),

   f. Drug traffickers often maintain articles of personal property, such as personal identification, personal correspondence, delivery pouches, diaries, checkbooks, notes, photographs, keys,

5

utility bills, and receipts. These items are essential to establish the identities of individuals in control or possession of the premises, residences, vehicles, storage areas, and containers being searched,

g. Drug traffickers will often use cellular telephone and/or pagers to further their criminal activity,

h. Drug traffickers often maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business, and

i. Drug traffickers often travel, sometimes great distances, to manage the production and/or distribution of controlled substances. Documentation of this travel will often be kept at these locations.

19. My awareness of these drug trafficking practices, as well as my knowledge of drug manufacturing and distribution techniques as set forth in this Affidavit, arise from the following:

a. my training in controlled substance investigations;

b. my past experience in outdoor marijuana cultivation investigations;

c. my involvement in this drug investigation;

d. what other experienced drug agents have advised me when relating the substance of debriefings of confidential informants and cooperating individuals in prior drug investigations and the results of their own drug investigations; and

e. other information provided through law enforcement channels.

## II. SUMMARY OF INVESTIGATION

21. This investigation involves a marijuana cultivation site (the Star Ridge cultivation site) located on public lands administered by the USFS in Tuolumne County, within the Eastern District of

6

AFFIDAVIT

1  California. The Star Ridge cultivation site was discovered by aerial reconnaissance on July 9, 2019,

2  when I, Special Agent Joseph M. Cook, observed live marijuana plants, in the location described below.

### III. PURPOSE OF AFFIDAVIT

22. This affidavit is made in support of a criminal complaint and the issuance of an arrest warrant for Jose GARCIA-ZAMORA. I have not included every detail of this investigation in this affidavit. I have included only the information that is necessary to establish probable cause for the purpose of charging Jose GARCIA-ZAMORA.

### IV. APPLICABLE LAW

23. This affidavit is based on violations of Title 21, United States Code, sections 841(a)(1) and 846, manufacturing marijuana and conspiracy to manufacture, to distribute and to possess with intent to distribute marijuana, a schedule I controlled substance, and Title 18, Unites States Code, sections 924(c), possession of a firearm during the commission of a drug trafficking offense.

24. The facts and information set forth herein are based upon my knowledge and observations, observations of other law enforcement personnel, my review of investigative materials, and conversations with federal and state law enforcement officials. This affidavit is intended to show there is probable cause for the requested complaint and arrest warrants and does not purport to include every fact known to me, rather, only those facts I believe necessary to establish probable cause. Title 21, United States Code, Section 841(a)(1), states it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Title 21, United States Code, Section 846, states any person who attempts or conspires to commit any offense defined under Title 21 of the United States Code shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the

1 attempt or conspiracy. Title 18, Unites States Code, sections 924(c), provides additional penalties for the
2 possession of a firearm during the commission of a drug trafficking offense.

3 **V. FACTS ESTABLISHING PROBABLE CAUSE**

4 26. On July 9, 2019,[1] I was conducting aerial reconnaissance of the Stanislaus National Forest by
5 helicopter. I observed an active marijuana cultivation site (the Star Ridge Cultivation Site) on public
6 lands administered by the USFS, in Tuolumne County, within the Stanislaus National Forest, Eastern
7 District of California. While over the top of the site, I photographed the garden and observed the
8 approximate GPS site of the garden as N38° 08' 4", W120° 13' 24". In the photographs I took, I can
9 clearly identify live marijuana plants in various stages of growth.

10 27. On July 14, 2019, USFS Law Enforcement Officer Kristopher Proctor, USFS Special Agent
11 Cooper J. Fouch, and I conducted ground reconnaissance of the Star Ridge Cultivation site in an attempt
12 to locate drop points and access trails associated with the site. Proctor, Fouch, and I and hiked down
13 Forest Road 3N57. At several points along the road, I observed trails that had recently been covered by
14 small tree branches, leading northeast to the direction of the area garden I had observed in the helicopter.
15 At the end of Forest Road 3N57 road, I observed an additional well-used trail leading to the east, I
16 believed that some or all of the trails along Forest Road 3N57 were being utilized to access the Star
17 Ridge cultivation site. At this time SA Fouch and I installed a camera adjacent to the trail.

18 28. LEO Proctor, SA Fouch, and I departed the area of the Star Ridge cultivation site and walked
19 back up Forest Road 3N57 back to our vehicle. SA Fouch and I remarked on the fact that we could smell
20 the odor of growing marijuana. SA Fouch and I installed two additional cameras along Forest Road
21 3N57.

---

[1] Any and all references herein to dates and times are to approximate dates and times.

8

AFFIDAVIT

29. On July 14, 2019, I obtained a federal search warrant for the Star Ridge cultivation site, signed by the honorable Judge Sheila K. Oberto. The search warrant authorized the search of GPS coordinates N38° 08' 4", W120° 13' 24", and any satellite sites.

30. On the morning of July 23, 2019, SA Fouch and I retrieved the images from a trail camera located near the top of the 3N57 Road, these camera images revealed a white 1992 Toyota Truck bearing California license plate 62202B2, make multiple trips on the 3N57 Road, a road that terminates at a landing (cul-de-sac) approximately 1-2 miles down the road. The white Toyota travelled in and out of this road on July 16, 2019, two trips on July 21, 2019, and on the morning of July 23, 2019. In an image from July 23, 2019, the operator of the vehicle is wearing an olive-drab green shirt and a gray baseball cap. This same clothing was later observed on Jose GARCIA-ZAMORA.

31. On July 26, 2019, officers and agents with the U.S. Forest Service and California Department of Fish and Wildlife raided the Star Ridge Cultivation site and executed the search warrant.

32. . At approximately 8:30 am, Law Enforcement Officer Mark Scott observed an individual who later identified himself as Jose GARCIA-ZAMORA, walk up hill from a small trail (later discovered to lead from a marijuana drying and processing area) on to the 3N57 road. GARCIA-ZAMORA was wearing a visible hip holster, containing a Rock Island Armory R1911A1 .45 ACP pistol. GARCIA-ZAMORA was holding a budded marijuana plant stem in his hand. Scott ordered GARCIA-ZAMORA to the ground and removed GARCIA-ZAMORA's handgun from his holster and cleared the loaded magazine from the weapon. I ran to Scott's location and handcuffed GARCIA-ZAMORA. I removed an additional loaded 1911 magazine from a pouch attached to the holster and a Buck Knife from his back pocket. GARCIA-ZAMORA was wearing reddish-brown pants, an olive drab shirt and a grey baseball hat (the same clothing referenced above).

9

AFFIDAVIT

33. At approximately 8:45 am, the white Toyota pickup that I had seen on photographs from the trail camera drove to our location on the 3N57 road (with two occupants). The occupants observed GARCIA-ZAMORA and I, then drove past us, exited the vehicle, and ran. GARCIA-ZAMORA indicated that the Toyota was coming to pick him up.

34. The Star Ridge cultivation site was photo and video documented prior to eradication. A total of 2,642, marijuana plants were eradicated from the Star Ridge cultivation site.

35. At the end of the raid and search warrant, SA Fouch and I removed the trail camera from the lower trail leading to the grow. Among the images from the camera were several images of Jose GARCIA-ZAMORA from July 23, 2019, in which the holster and firearm are clearly visible. GARCIA-ZAMORA was also wearing the same clothing he was wearing on July 26, 2019. In one image GARCIA-ZAMORA is carrying a Honda water pump, which was later observed as a component of the watering system of the Star Ridge cultivation site.

36. GARCIA-ZAMORA is a Spanish speaker, he was advised in Spanish of his Miranda rights, by California Wildlife Warden Brian Boyd. In sum, GARCIA-ZAMORA stated that he had been working in the Star Ridge cultivation site since Wednesday (July 24, 2019) and that he was being paid $300 a day. He admitted coming to the site in the white Toyota Truck.

**VI. OPINIONS AND CONCLUSION**

37. Based on the foregoing, I submit there is probable cause to believe that Jose GARCIA-ZAMORA violated Title 21, United States Code, Sections 841(a)(1) and 846, manufacture and conspiracy to manufacture, to distribute, and to possess with intent to distribute marijuana, a Schedule I controlled substance, and Title 18, Unites States Code, sections 924(c), possession of a firearm during the commission of a drug trafficking offense.

AFFIDAVIT

38. I swear under penalty of perjury that the facts presented are true and accurate to the best of my knowledge.

Joseph M. Cook
Special Agent
United States Forest Service

Sworn and subscribed to before me on
July 27, 2019

The Honorable Sheila K. Oberto

Approved as to Form:

/s/ Justin J. Gilio
JUSTIN J. GILIO
Assistant United States Attorney

11

Affidavit